Filed 12/7/20  P. v. Montes de Oca CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B300064 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 9PH01947) |
| v. | |
| WILLIAM MONTES DE OCA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Robert M. Kawahara, Judge.  Affirmed.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Deputy Attorney General, Michael R. Johnsen and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant William Montes de Oca appeals from the court's order revoking his parole and remanding him to the custody of the Department of Corrections and Rehabilitation and the jurisdiction of the Board of Parole Hearings for future parole consideration.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was convicted of second degree murder in October 1988 and sentenced to life with the possibility of parole (Super. Ct. L.A. County, No. A956489). In December 2017, defendant was released on supervised lifetime parole. (Pen. Code, § 3000.1.) The petition for revocation of defendant's parole, filed on March 21, 2019, reported the relevant terms and conditions of parole, the circumstances of the alleged violation, and defendant's pertinent history and background, and explained why his parole agent, Don Gonzales, recommended parole be revoked. We summarize below the petition and the testimony at the parole revocation hearing.

The terms and conditions of parole, acknowledged and signed by defendant before his release from prison, included the condition that he report to his parole agent on the first working day after his release from custody and provide his residence address, telephone number, and employment information. The terms and conditions also required that he report to his parole agent, in advance, any anticipated change of residence, and that he inform his parole agent within 72 hours of any change of employer, employment location or termination of employment.

Defendant initially was placed in a transitional housing program that "addresse[d] anti-social cognitions and promote[d] a positive reintegration" and he also received "other resources"

from the Division of Adult Parole Operations (DAPO). Mr. Gonzales spoke with defendant by cell phone and "carefully explained" that a warrant could be issued if he failed to report. Defendant repeatedly said, "I'll be there, Gonzales, I'll be there." Mr. Gonzales also spoke with a program representative by cell phone, who said he further emphasized to defendant the importance that he "absolutely needed" to check in with his parole agent. But defendant left the program without permission and without leaving a forwarding address.

A warrant issued and defendant was arrested for absconding from parole supervision on January 15, 2019. He was released from custody on January 18 "unbeknownst to DAPO" (apparently, the county jail did not place a parole hold on defendant's release), and he did not report to Mr. Gonzales. Mr. Gonzales made many unsuccessful attempts to locate defendant, including driving through the high transient areas of Los Angeles and speaking with a representative of the program from which he absconded to ask if they had heard from defendant and request that, if he arrived unannounced, they tell him to check in with his parole agent. Mr. Gonzales submitted a second warrant, and on March 15, 2019, defendant was arrested again.

The petition to revoke parole stated that "[i]ntermediate sanctions have been considered. However, they have been deemed not appropriate at this time." The petition explained defendant is a 52-year-old lifer parolee on parole for murder, who left his transitional housing program "without prior approval from DAPO and failed to provide a forwarding address." Defendant "is a chronic absconder." DAPO considered referring defendant to a residential drug treatment program as an intermediate sanction to address this violation but concluded "his

3

negative behavior has clearly escalated and has become a lifestyle."

The contested revocation hearing was held on April 29, 2019. Defendant did not demur to the petition or otherwise object that the petition failed to comply with statutory requirements.

Mr. Gonzales testified to the efforts he made to locate defendant, including contacting the transitional housing program defendant left without notice to see if he had been in touch with anyone there, and looking for him on the streets. Mr. Gonzales received no calls or messages from defendant, and defendant's name was not on any of the sign-in sheets at the office, indicating defendant had not reported to the parole office sometime when Mr. Gonzales was out in the field. Mr. Gonzales did receive a message about a month after the second warrant issued that might have been from defendant (the person had a similar accent), but that person did not leave his name, saying only he wanted to check in.

Defendant also testified. He said he tried to call Mr. Gonzales several days after his release. Defendant also tried to report in person, going to the office in Inglewood to explain he "was out of the county," and he was told Mr. Gonzales was not there. Defendant said his original parole agent used to make field visits, and he never had to go into any office to report. Defendant said he left a message for Mr. Gonzales, who never called him back.

Agent Cecelia Mann testified the parole office in Inglewood has been closed since 2013 (six years before defendant claimed to have reported there).

The court found defendant's testimony was not credible and that he had violated the terms of parole. The court revoked parole and remanded defendant to the custody of the Department of Corrections and Rehabilitation and the jurisdiction of the Board of Parole Hearings for further consideration in accordance with Penal Code section 3000.08, subdivision (h). This appeal followed.

## DISCUSSION

Defendant contends the court erred in not requiring DAPO to plead and prove it had considered intermediate sanctions short of revocation, as required by Penal Code section 3000.08, subdivision (f) and California Rule of Court, rule 4.541(e).

The contention has been forfeited. Defendant did not challenge the petition by way of demurrer or otherwise raise any objection on this ground in the trial court. "The forfeiture doctrine is a 'well-established procedural principle that, with certain exceptions, an appellate court will not consider claims of error that could have been—but were not—raised in the trial court. [Citation.]' [Citations.] Strong policy reasons support this rule: 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided. [Citations.]' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; see also *People v. Upsher* (2007) 155 Cal.App.4th 1311, 1318 ["Objections to defects in the form of an accusatory pleading must be made by way of demurrer. . . . When a defendant fails to demur, 'the claimed defect in the information [is] waived.' "].)

If defendant had raised this objection below, DAPO and the court would have had an opportunity to clarify any claimed ambiguity as to any intermediate sanctions considered and

rejected.  Having not done so, defendant may not raise the issue for the first time on appeal.

In any event, his contention has no merit.  The petition described above complies with the statutory requirements. (Pen. Code, § 3000.08, subd. (f) ["The petition shall include a written report that contains additional information regarding the petition, including the relevant terms and conditions of parole, the circumstances of the alleged underlying violation, the history and background of the parolee, and any recommendations."]; Cal. Rules of Court, rule 4.541(e) ["In addition to the minimum contents described in (c), a report filed by the supervising agency in conjunction with a petition to revoke parole . . . must include the reasons for that agency's determination that intermediate sanctions without court intervention . . . are inappropriate responses to the alleged violations."].)  The petition adequately alleged why DAPO concluded that, despite "diverse efforts" to reintegrate defendant back into the community, defendant did not "incorporate" these resources before he absconded, and he became "a chronic absconder."

## DISPOSITION

The order revoking defendant's parole is affirmed.


GRIMES, Acting P. J.


WE CONCUR:

STRATTON, J.



WILEY, J.

6